MARIE F. HUFFMAN, Guardian Ad Litem for WANDA JEAN HUFF-
MAN v. GULF OIL CORPORATION

No. 7525SC188

(Filed 2 July 1975)

**Principal and Agent § 9— watchdog kept by service station operator —
liability of oil company — apparent authority**

In an action to recover for injuries sustained by the minor plain-
tiff when she was bitten by a dog on the premises of a Gulf Oil
service station, plaintiff's evidence was insufficient to hold Gulf Oil
Corporation liable for the negligence of the service station operator
upon theories of apparent agency and agency by estoppel where it
tended to show that the dog was used by the service station operator
as a watchdog for a coal and wood business on adjacent, separately
leased property since a dealer's activity in keeping a watchdog does
not come within the apparent agency doctrine, especially where the
watchdog is used in connection with a separate business on adjacent
property.

APPEAL by plaintiff from *Thornburg, Judge.* Judgment en-
tered 11 October 1974 in Superior Court, Burke County. Heard
in the Court of Appeals 13 May 1975.

This is a civil action instituted by the guardian ad litem
and mother of the minor plaintiff against the defendants, Ray
Whisnant and Gulf Oil Corporation, to recover damages for
personal injuries sustained by the minor plaintiff, when she
was bitten by a dog owned by the defendant Whisnant, and kept
on his business premises "for purposes of guarding said prem-
ises." On 31 August 1973 plaintiff filed a complaint alleging
that on 9 June 1971 the minor plaintiff and her mother were on
the business premises of the defendant Whisnant, "who was at
that time operating Ray's Scenic Gulf as an agent, servant, and
employee of the defendant, Gulf Oil Corporation"; that they
"had gone upon these premises for the mutual benefit of them-
selves and the defendants in that they were on said premises to
purchase the goods and services which were for sale to the pub-
lic" and "were therefore invitees of the defendants"; that the
minor plaintiff was attacked by a large German Shepherd dog
owned by the defendant Whisnant, and that as a proximate result
of the attack, "suffered grevious personal injuries." Plaintiff
further alleged that the defendant Whisnant, as agent of the
defendant Gulf, knew of the dog's vicious character and was
negligent in failing to restrain or warn customers of its propen-
sity "to attack and bite persons who came upon said premises."

The defendant Gulf answered denying negligence and alleging contributory negligence on the part of the minor plaintiff. A subsequent motion for summary judgment filed by the defendant Gulf was denied.

At the trial the plaintiff presented several witnesses. A police officer with the City of Morganton, who investigated the incident on 9 June 1971, testified that he found a large German Shepherd dog chained to a small building, which was located about 28 feet behind the defendant Whisnant's Gulf station; that the dog's chain allowed it to reach a driveway which ran behind the station; and that the dog was barking and growling and would not allow one of his fellow officers to get out of the right-hand door of their patrol car. The officer further testified that on 9 June 1971 he did not see a warning sign, but that upon his return the following day, nearby shrubs had been cut and a large "Beware of Dog" sign was visible from the street.

A medical doctor who treated the minor plaintiff's injuries described her injuries and gave his opinion regarding the cost of additional surgery that might improve her appearance.

Several witnesses testified that on prior occasions the dog was "very aggressive" and would growl and bark. A witness testified that on one occasion the dog had "charged" toward him.

The minor plaintiff's mother testified that her husband stopped at the Whisnant's Gulf station on the morning of 9 June 1971 because "the car was giving [them] trouble and it needed some gas"; that he parked beside the station and began working under the hood and that she had just gotten the key to the restroom when she heard a scream and saw the defendant Whisnant's dog with her six-year-old daughter's head in its mouth, slinging her. Mrs. Huffman stated that the dog had its chain extended and was in the driveway behind the station when she saw it. The dog attacked her and tore her dress when she rushed over to get her daughter.

The minor plaintiff's father testified that Gulf advertising had influenced him to stop at this station and that he had been using Gulf products "for about six or seven months"; that he "had not looked" to see a "Beware of the Dog" sign and that he did not see his daughter walk from the car in the direction of the dog because he was under the hood checking the oil and looking at the carburetor.

The defendant Whisnant was called as an adverse witness. Whisnant testified that he had been operating this particular Gulf station for "close to ten years"; that he advertised and sold Gulf Oil Company products; that he "leased the property back of the station from someone by the month" and operated a separate coal and wood business out of the building on that property. Whisnant stated that although the two tracts of land were rented separately, there was no fence or anything between them and "[t]he people that sold the gas and oil also sold the coal and wood." He further testified that he had had the dog for "four and a half or five years"; that before he got the dog he had problems "with people stealing stuff" and "[t]he dog was there to guard the coal and the wood"; that "[t]he purpose of the dog was to scare people away from there." Sometimes the dog would bark and growl and "[i]f they got close to him, he would run at them and chase them." Whisnant denied the dog had ever bitten anyone and stated that he did not consider the dog mean. He also maintained that a large "Beware of Dog" sign was visible on 9 June 1971 and denied that he had sawed off a tree limb after the minor plaintiff was bitten to make the sign more visible. Whisnant testified that he had not seen the minor plaintiff's parents before 9 June 1971.

At the close of the plaintiff's evidence, the defendant Gulf moved for a directed verdict pursuant to Rule 50 (a) of the North Carolina Rules of Civil Procedure on the following grounds:

"1. That on the basis of the pleadings and the evidence the plaintiff has shown no right to relief against the defendant, Gulf Oil Corporation.

2. That there is no substantial evidence that the defendant, Gulf Oil Corporation, had any control over the premises occupied by the defendant, Ray Whisnant, on the occasion giving rise to this action.

3. That there is no substantial evidence that the defendant, Ray Whisnant, was the agent, servant or employee of Gulf Oil Corporation on the occasion giving rise to this action.

4. That there is no substantial evidence that the defendant, Gulf Oil Corporation, was negligent in proximately causing any injuries or damages which the minor plaintiff may have sustained.

5. That the plaintiff has offered no evidence as against the defendant, Gulf Oil Corporation, of either the agency of Ray Whisnant to Gulf Oil Corporation or of any liability on the part of Gulf Oil Corporation, but on the contrary, the evidence submitted as to the defendant, Gulf Oil Corporation, discloses affirmatively that the defendant, Ray Whisnant, was an independent contractor, and had sole and exclusive control over the premises leased by him from John Mackerall, and that Gulf Oil Corporation had no control or right to control over said premises or the defendant, Ray Whisnant."

From judgment allowing defendant Gulf's motion for a directed verdict on grounds "the plaintiff's evidence considered in the light most favorable to the plaintiff, was insufficient to support a verdict for the plaintiff against the defendant, Gulf Oil Corporation," plaintiff appealed.

*Simpson, Martin, Baker & Aycock, by Samuel E. Aycock, for plaintiff appellant.*

*Uzzell and Dumont, by Harry Dumont, Robert E. Harrell and Susan Shatzel Craven, for defendant appellee.*

MORRIS, Judge.

Rule 54(b) of the Rules of Civil Procedure provides as follows:

"(b) *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes. In the absence of entry of such a final judgment, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and shall not then be subject to review either by appeal or otherwise except as expressly provided by these rules or other statutes. Similarly, in the absence of entry of such a final judgment,

· any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The record in this case does not indicate the disposition of plaintiff's claim against the defendant Whisnant nor does the judgment in this case state there is "no just reason for delay." Accordingly, plaintiff's appeal is subject to dismissal. pursuant to Rule 54(b). However, counsel for both parties have stated in oral argument that judgment has been entered with respect to plaintiff's claim against the defendant Whisnant. We, therefore, conclude that the judgment in the case at bar is appealable and have decided to consider plaintiff's appeal on the merits.

Plaintiff's only assignment of error is to the decision of the trial court allowing the defendant Gulf's motion for a directed verdict at the close of the plaintiff's evidence. Plaintiff argues that there was sufficient evidence from which the defendant Gulf could be held liable upon the theories of apparent agency and agency by estoppel for the negligence of the defendant Whisnant, and, therefore, it was error for the trial court to allow the defendant Gulf's motion. In support of this contention, plaintiff relies heavily upon the case of *Gizzi v. Texaco, Inc.*, 437 F. 2d 308 (3d Cir. 1971).

In *Gizzi* the plaintiffs Gizzi and Giaccio were seriously injured in an expressway collision when the brakes failed on a 1958 Volkswagen van purchased by Gizzi from a Texaco service station operator on the day of the accident. Incident to the sale of the van the Texaco dealer had agreed to put the van "in good working order." His repairs to the van "included the installation of a new master braking cylinder and a complete examination and testing of the entire braking system." Both plaintiffs sued Texaco for damages for personal injuries they sustained in the collision under theories of apparent agency and agency by estoppel. In support of their theories of liability plaintiffs introduced evidence that Texaco exercised control over many activities of the service station in question; that the Texaco insignia and the slogan "Trust your car to the man who wears the star" were prominently displayed by the station, as well as a sign indicating the availability of an "Expert foreign car mechanic" on the premises; and that Texaco engaged in substantial national advertising portraying its dealers as skilled in servicing automobiles. There also was evidence in the record that approximately 30 percent of all Texaco dealers sold used

cars and that this activity was "known to and acquiesced in by the corporation."

The United States District Court for the Eastern District of Pennsylvania ruled that the plaintiffs had not introduced sufficient evidence to warrant submission of the issues of apparent authority and agency by estoppel to the jury and directed a verdict in favor of the defendant Texaco. On appeal, the Third Circuit, viewing the evidence in the light most favorable to the plaintiffs, held that "[w]hile the evidence on behalf of appellants by no means amounted to an overwhelming case of liability, we are of the opinion that reasonable men could differ regarding it and that the issue [of apparent authority] should have been determind by the jury, after proper instructions from the court."

In our opinion the Gizzi case is clearly distinguishable from the case at bar. Here the dog was used in connection with a separate coal and wood business and was kept on separately leased property. There was no evidence that the defendant Gulf knew that the separate business was operated by the defendant Whisnant or that the dog could reach the service station property. Moreover as pointed out in a recent note entitled "Agency —Apparent Authority and Agency by Estoppel: Emerging Theories of Oil Company Liability for Torts of Service Station Operators," 50 N.C. L.Rev. 647 (1972), *"Gizzi may represent an outer limit with respect to what reasonable men could agree on as being within the apparent authority created by the oil company's manifestations to the public. It cannot reasonably be assumed that the oil company 'holds out' its dealer with respect to each and every activity the dealer undertakes,* and the sale and repair of a used vehicle would seem to be on the borderline." (Emphasis supplied.)

We are of the opinion that a dealer's activity in keeping a watchdog is clearly beyond the borderline of the apparent agency doctrine, especially where, as here, the watchdog is used in connection with a separate business on adjacent, but separately leased premises.

It is most unfortunate that, by reason of Whisnant's keeping a vicious dog on property controlled by him, a little girl has been so disfigured. However, the liability of Whisnant is not before us, and we find nothing in the record which would justify placing liability upon Gulf Oil Corporation.

Affirmed.

Chief Judge BROCK and Judge HEDRICK concur.