**Laura REAGIN, Plaintiff,**

v.

**Charles Lawrence TERRY and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station; Mt. Hope Shell Service Station, a partnership; Shell Oil Company; Quality Oil Company of Statesville, Inc.; and Quality Oil Company, Defendants.**

**Civ. No. C–84–470–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

Sept. 4, 1986.

David M. Clark, Greensboro, N.C., and D. Lake Ramsey, Atlanta, Ga., for plaintiff.

E. Thomas Maddox, Jr., Frederick K. Sharpless, Joseph F. Brotherton and Joseph E. Elrod, III, Greensboro, N.C., for

Charles Terry, Troy Terry and Mt. Hope Shell Service Station.

Vance Barron, Jr., Greensboro, N.C., and Robert L. Bernard, Houston, Tex., for Shell Oil Co.

William Kearns Davis and Richard V. Bennett, Winston–Salem, N.C., for Quality Oil Co. of Statesville, Inc. and Quality Oil Co.

## MEMORANDUM OPINION

BULLOCK, District Judge.

In this diversity action Plaintiff Laura Reagin sought damages for injuries arising from the criminal acts of a third party which occurred on the premises of the Mt. Hope Shell Service Station during the early morning hours of June 17, 1982. In her complaint she alleged that the Mt. Hope Shell Service Station and its owners and operators, Charles Lawrence Terry and Troy Virgil Terry, the Shell Oil Company, Quality Oil Company, and Quality Oil Company of Statesville, Inc., were negligent in the supervision, maintenance, and safeguarding of the premises. The Plaintiff also alleged that the service station attendant Edward C. Brasington was negligent in several respects. Prior to trial the court granted Brasington's motion for summary judgment. At trial, and at the close of all of the evidence, the court granted the motions of Quality Oil Company and Quality Oil Company of Statesville, Inc., for a directed verdict in their favor.

Issues were submitted and answered by the jury as follows:

1. Was the criminal assault on the Plaintiff reasonably foreseeable by the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership?

<u>Yes</u>
(Yes or No)

2. If the answer to Issue No. 1 is "Yes," did the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership, breach their duty of ordinary care under the circumstances by failing to provide adequate security measures?

<u>Yes</u>
(Yes or No)

3. If the answers to Issues Nos. 1 and 2 are "Yes," was the breach of duty by the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership, a proximate cause of the injuries suffered by Plaintiff?

<u>Yes</u>
(Yes or No)

4. Were Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership, agents of the Defendant Shell Oil Company by the existence of apparent authority?

<u>Yes</u>
(Yes or No)

5. If the answers to Issues Nos. 1 and 2 and 3 are "Yes," what amount, if any, of actual and compensatory damages is the Plaintiff entitled to recover?

<u>$450,000.00</u>
(amount)

Mt. Hope Shell Service Station and its owners and operators, and the Shell Oil Company, have moved for judgment notwithstanding the verdict under Rule 50(b), Fed.R.Civ.P., and, alternatively, for a new trial under Rule 59, Fed.R.Civ.P. The Shell Oil Company also seeks full indemnity from Mt. Hope Shell Service Station and from Quality Oil Company, a limited partnership, for any damages that it may be called upon to pay to the Plaintiff.

### Defendants' Motions for Judgment Notwithstanding the Verdict

Even in a diversity case, the sufficiency of the evidence to create a jury question is governed by federal law. *Owens by Owens v. Bourns, Inc.,* 766 F.2d 145, 149 (4th Cir.1985), *cert. denied,* 474 U.S. 1038, 106 S.Ct. 608, 88 L.Ed.2d 586 (1986). The question before the court on the motions by the Defendants for judgment notwithstanding the verdict under Rule 50(b), Fed.R.Civ.P., is whether there is evidence upon which a jury can properly find a verdict. In determining whether the evidence is sufficient, the court is not free to weigh any evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. Instead it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence. However, a mere scintilla of evidence is insufficient to sustain a verdict. When a jury is called upon to determine causation, the inferences it draws to reach its verdict must be reasonably probable; mere speculation is insufficient. *Ralston Purina Co. v. Edmunds,* 241 F.2d 164, 167 (4th Cir.), *cert. denied,* 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957).

With these principles in mind, the court must determine whether the evidence before the jury was sufficient to permit a finding that the criminal attack upon the Plaintiff was not only foreseeable, thus imposing a duty of reasonable care upon the station operators, but also that the operators breached their duty of reasonable care, and that the Plaintiff's injuries were causally related to the breach of duty. It is well established in North Carolina that a store owner is ordinarily not liable for injuries to invitees which result from the intentional criminal acts of third persons. It is usually held that such acts cannot be reasonably foreseen by the owner, and therefore constitute an independent, intervening cause absolving the owner of liability. Nevertheless, the law recognizes that where circumstances exist which give the owner reason to know that there is a likelihood of conduct on the part of third persons which endanger the safety of his invitees a duty to protect or warn the invitees can be imposed. *Foster v. Winston–Salem Joint Venture,* 303 N.C. 636, 281 S.E.2d 36 (1981).

> Since the business operator is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of third persons are occurring or are likely to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of a visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*Id.* 303 N.C. at 639–40, 281 S.E.2d 36, quoting *Restatement (Second) of Torts* § 344 comment f.

In June 1982, the Mt. Hope Shell Station was open 24 hours a day and was in a relatively isolated area located off Interstate 85 between Greensboro and Burlington. Across from the station was a Texaco station and a restaurant, neither one of which were open late at night. There was also a private residence across from the station. These were the only other buildings in the area. Adjoining the station was an empty field with a large wooded area behind.

The evidence before the jury was that prior to June 17, 1982, the station had experienced two armed robberies in 1976, and during the December 1976 robbery the station attendant had been shot. In 1974 some tires had been stolen from the station. These were the only criminal acts occurring on the premises. In addition, there had been a break-in at the Texaco station and at a residence in the general

area at some unspecified times. The night attendant, Edward Brasington, testified that he carried a pistol for his protection and that he called the Sheriff's Department two or three times a week on the direct line from the station to report suspicious persons and vehicles in the area.

Viewing this evidence most favorably to the Plaintiff, and giving her the benefit of all reasonable inferences from the evidence, including the inference that the past criminal acts were known to the operators of the station in 1982, the court believes that the Plaintiff may have presented just enough evidence to permit the jury to find that it was reasonably foreseeable that criminal acts would occur on the premises which could involve a risk to any invitees present. *See Sawyer v. Carter,* 71 N.C.App. 556, 561, 322 S.E.2d 813, 817 (1984), *cert. denied,* 313 N.C. 509, 329 S.E.2d 393 (1985) (The North Carolina Court of Appeals affirmed summary judgment for defendant in a case involving a convenience-type store where there was less evidence of foreseeability than in the present case. However, the court said that, although evidence of similar criminal activity committed on the premises is the most probative type of evidence of foreseeability, there is no need to adopt a bright-line rule limiting evidence *exclusively* to prior crimes on the premises.). *See also Foster v. Winston–Salem Joint Venture,* 303 N.C. 636, 643, 281 S.E.2d 36, 40 (1981) (Hanes Mall had only one guard for entire parking lot during pre-Christmas shopping season and the mall manager had represented to the public that mall security measures were augmented during that season; 31 incidents had occurred in the parking lot, including 4 or 5 assaults, during the past year. The North Carolina Supreme Court reversed summary judgment for the defendant.); *Urbano v. Days Inn of America, Inc.,* 58 N.C.App. 795, 798, 295 S.E.2d 240, 242 (1982) (motel's premises were not guarded or patrolled by its own security officers, but instead routine local police visits were relied upon for security, although there were at least 42 episodes of criminal activity on the premises during the three years preceding plaintiff's injury, 12 of which occurred during the immediately preceding three and one-half months; summary judgment for the defendant held to be improper); and *Brown v. North Carolina Wesleyan College,* 65 N.C.App. 579, 309 S.E.2d 701 (1983) (court's decision upholding summary judgment for defendant turned on foreseeability but the court indicated, based on the forecasts of evidence, that defendant's security would have been sufficient under the circumstances).

Having resolved the issue of foreseeability in the Plaintiff's favor, the jury was then called upon to determine whether the criminal acts of third persons, which they had found to be reasonably foreseeable, could have been prevented by the exercise of ordinary care. A landowner's duty to use reasonable care to safeguard his business invitees from the criminal acts of third persons arises only if such acts are reasonably foreseeable. The question thus becomes what would be reasonable care under the circumstances, considering the evidence of conditions in the surrounding area, the general character of the neighborhood, the location of the premises, the character of the business enterprise, and other criminal activity occurring on the premises. *Sawyer,* 71 N.C.App. at 561, 322 S.E.2d at 817.

The undisputed evidence before the jury was that the Mt. Hope Shell Service Station was staffed during the late evening and early morning hours by one attendant, age fifty-five, who had suffered a slight stroke and who had not been given any emergency training, and that the attendant carried a pistol for protection. The operators of the station had also installed a direct telephone line to the Guilford County Sheriff's Department, which the night attendant used two or three times a week to report suspicious activity in the area. The station was lighted by floodlights at the top of five poles around the station area and also by lights under the eaves of the station. One of the floodlights at the back area of the station near the empty field was not operating on June 16–17, 1982. The windows of the station were partially obscured by

displays, thus hindering vision in and out of the building.

■ The court is of the opinion that the only facts before the jury from which they could infer a breach of ordinary care by the station operators were the single attendant, the partially-obscured windows, and the inoperable pole light.[1] As to the windows, it is highly speculative whether the Plaintiff would have noticed anything out of the ordinary if she could have easily looked through the windows before entering the station, even if she attempted to do so; in any event when she entered the station, she noticed nothing unusual about the two men standing inside and went directly to the restroom. Although the robber assaulted the Plaintiff in the darkened area near the inoperable light pole, he already had her at gunpoint before exiting the station, and could have just as easily walked a few feet more beyond the station into the field or wooded area to carry out his attack. Thus any breach of duty depends substantially on the failure of the station operators to have more than one attendant on duty at night. Plaintiff presented no evidence that additional attendants were the custom at other similarly-situated all-night stations, or that silent alarms, television cameras, or other security devices were used at other locations.[2] In fact, all of the evidence before the jury was to the effect that other all-night businesses at the time were customarily staffed by only one attendant. Even if it was a breach of duty for the station operators not to have had a second night attendant, the court believes it would be sheer speculation for the finder of fact to determine either that a second attendant would have deterred the robber, or would have been able to prevent him from carrying out his unlawful acts. *Cf. Foster,* 303 N.C. 636, 281 S.E.2d 36, and *Urbano,* 58 N.C.App. 795, 295 S.E.2d 240.

■ Finally, even if it is assumed that the Plaintiff's evidence was sufficient on both the issues of foreseeability and breach of the duty of reasonable care, there still must be evidence from which the finder of fact could find that the Defendants' negligence was, as a matter of reasonable probability, causally related to the criminal assault on the Plaintiff both as a cause in fact and a proximate cause of Plaintiff's injuries. It cannot be said on the basis of evidence presented at trial that Defendants' conduct actually caused Plaintiff's injuries as a matter of fact; neither can it be said that those injuries would not have been sustained without Defendants' conduct or failure to act. The evidence is uncontradicted that the assailant was an experienced criminal, just a few days out of prison, who determined while riding along the interstate with friends to "rob something" prior to observing or knowing anything at all about the Mt. Hope Shell Service Station. Again, to determine that the assailant would have been deterred or thwarted by two attendants, or by additional lighting, is to speculate about mere possibilities, rather than to find reasonable probability. *See Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 241 (4th Cir.

---

1. Although the Plaintiff argued that it was negligence for the operators to have a 55–year-old man, who had suffered a slight stroke, on duty at night, and to arm him with a pistol, and for him to have allowed the assailant to loiter in the station prior to the robbery and attack, the court instructed the jury that there was no evidence from which they could find that the action or inaction of the attendant was negligent, since he had no time or duty to act because he could not do so without risk to his own safety. The evidence also indicated that the assailant "got the drop" on the attendant from behind with a sawed-off shotgun or rifle, and then disarmed him. *See Higgins v. New Orleans Public Service, Inc.,* 347 So.2d 944 (La.1977); *Manganello v. Permastone, Inc.,* 291 N.C. 666, 231 S.E.2d 678, (1977); *Parrish v. Atlantic Coast Line R. Co.,* 221 N.C. 292, 20 S.E.2d 299 (1942); *see also Reagin v. Terry,* slip op. C–84–470–G (M.D.N.C. March 26, 1986) (memorandum opinion by which the court dismissed Brasington as a defendant on his motion for summary judgment, and in which the cases cited above are discussed).

2. Sergeant C.B. Willis of the Guilford County Sheriff's Department, called as a witness by the Plaintiff, testified that he had been assigned to the Mt. Hope Shell Station area for seven years, that the station was well-lighted, and that the Mt. Hope Station was no more susceptible to crime than any other twenty-four hour operation.

1982); *Ralston Purina Co. v. Edmunds, supra.*

The Plaintiff in this case is an undeniably sympathetic victim of a tragic act for which she is in no way responsible. Indeed, the Plaintiff has made a commendable effort to carry on a normal life following an experience for which no amount of money can fully compensate. However, by insisting on reasonable probability rather than mere possibility to support a jury verdict, the court recognizes its duty not to ignore current legal standards simply because the Plaintiff presents a sympathetic case.

Defendant Shell Oil also contends that there is insufficient evidence from which the jury could find that the Terrys were agents of Shell by the existence of apparent authority. Despite the absence of an express agency relationship, an agency may be created by manifestations made by the alleged principal to a third person or the public at large, and the reasonable belief by a third person to whom the manifestations are made that the purported agent is authorized to bind or act on behalf of the principal. *Restatement (Second) Agency* § 8 (1957). In other words, a principal is held accountable for the acts of one he "holds out" as his agent. In order to prevail on this theory of liability, the Plaintiff must prove both a reasonable and justifiable reliance upon the principal's manifestations of authority, and that the conduct of the agent was within the scope of his apparent authority. *See Gizzi v. Texaco, Inc.,* 437 F.2d 308, 309–10 (3d Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed. 2d 57 (1971); *see also* Note, *Agency—Apparent Authority and Agency by Estoppel: Emerging Theories of Oil Company Liability for Torts of Service Station Operators,* 50 N.C.L.Rev. 647 (1972).

The evidence submitted on this issue was as follows: that, during an interstate journey, Plaintiff observed the scallop shell sign from the highway; that knowing the sign to be affiliated with Shell Oil Company and that Shell was a national brand she could trust, she exited toward the Mt. Hope Shell Station for a rest stop and to purchase coffee; that she had never pur-

chased Shell's petroleum products and did not have a Shell credit card; that she remembered seeing two Shell "answer man" booklets; and that she believed Shell maintained a "safe place of business." Plaintiff contends that the scallop shell sign, Shell insignia and uniform worn by the night attendant, and the two "answer man" booklets are sufficient to constitute manifestations by Shell of the station's apparent authority. In *Gizzi, supra,* the court determined that the display of Texaco's insignia and slogan ("trust your car to the man who wears the star") were sufficient to raise a jury question on apparent authority, albeit not "an overwhelming case of liability." 437 F.2d at 310. In *Huffman v. Gulf Oil Corporation,* 26 N.C.App. 376, 216 S.E.2d 383 (1975), the North Carolina Court of Appeals affirmed a directed verdict for the defendant Gulf Oil stating "that a dealer's activity in keeping a watchdog is clearly beyond the borderline of the apparent agency doctrine, especially where, as here, the watchdog is used in connection with a separate business on adjacent, but separately leased premises." 216 S.E.2d at 387. In both *Gizzi* and *Huffman,* the courts focused on the scope of the apparent authority wielded by the alleged agents, apparently accepting the plaintiffs' claims that the oil corporations' manifestations in the form of advertising were adequate indications of control on which the plaintiffs had relied. Similarly in this case, the scallop shell sign which was observed from the highway and at the station would induce reasonable reliance that Shell held out this particular station to be its agent.

The manifestations alone, however, do not make Shell Oil liable because Plaintiff must also show that the purported agent's conduct was within the scope of his apparent authority. In *Huffman,* the court ruled in favor of Gulf since the dealer's activity was "clearly beyond" the scope of his apparent authority. In that case, the minor plaintiff's injuries were sustained in an attack by a dog which was kept by the station owner in connection with a separate coal and wood business operated on leased property separate from the service station. Also, in *Gizzi* the trial court held that the

principal's manifestations "could not possibly be construed to apply to installing new brake systems or selling used cars" but could apply to "the servicing of automobiles, ... to the extent of putting gas in them and the ordinary things that are done at service stations." 437 F.2d at 310. Although this holding was reversed by the court of appeals, it is clear that the dispositive element of proof concerned the scope of apparent authority. Likewise in this case, the issue of Shell's liability based on apparent authority hinges on the scope of authority held by the Terrys. Defendant Shell Oil contends that it should not be held liable since Plaintiff did not purchase any of its petroleum or related products but only utilized restroom facilities and purchased coffee. The court is of the opinion that there is sufficient evidence to present a jury question as to whether the maintenance of safe premises, including restroom facilities, is within the scope of the Terrys' apparent authority. Unlike the operation of a coal and wood business as presented in *Huffman*, the operation of premises for safe public usage appears to be within the realm of reasonable expectation for service station operations.

### Defendants' Alternative Motions for a New Trial

Defendants have also moved, in the alternative, for a new trial under Rule 59, Fed. R.Civ.P. The Defendant Shell Oil Company contends that the jury verdict was against the weight of the evidence and was excessive. The Terry Defendants cite a number of grounds in addition to their arguments presented in support of their motion for judgment notwithstanding the verdict. They rely principally on an improper question by Plaintiff's counsel in cross-examination of Troy Terry concerning a twenty-five-year-old breaking and entering conviction, the court sustaining Plaintiff's objection to defense counsel's question to Sergeant Willis of the Greensboro Police Department on cross-examination which asked, "In your opinion would any measures have prevented this?", and the contention that the jury's findings were against the weight of the evidence and the product of sympathy, passion, and prejudice.

■ Assuming *arguendo* that the Plaintiff has met her burdens on foreseeability, negligence, and causation, the court does not believe that a new trial should be granted on the grounds that the the the verdict was against the weight of the evidence. The court is aware that upon a motion for a new trial under Rule 59 it has the responsibility to weigh all of the evidence and consider the credibility of witnesses and other pertinent factors to determine whether the verdict was " 'against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice.' " *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891–92 (4th Cir.1980), quoting *Williams v. Nichols*, 266 F.2d 389, 392 (4th Cir.1959). Ordinarily, a trial judge who believes the plaintiff's evidence to be insufficient as a matter of law would also believe that a verdict for the plaintiff based on the same evidence would be against the weight of the evidence. However, in this case there was practically no conflicting evidence to weigh; Defendants' witnesses did not contradict the Plaintiff's evidence and Defendants' cross-examination did nothing to impeach the Plaintiff's witnesses.[3] Therefore, the court believes that under the unique circumstances of this case if Plaintiff's evidence is legally sufficient the verdict should stand, especially since the essential facts before the jury were not in dispute. Nor does the court believe that a new trial should be granted for the additional reasons cited by the Terry Defendants. As to the improper question by Plaintiff's counsel concerning the prior conviction of Troy Terry, the court immediately gave an instruction to the jury directing them to com-

---

**3.** The only significant credibility issue was the Terry Defendants' contention that they were not aware of previous criminal activity at the Mt. Hope Station in 1976, despite the fact that at the time they were operating another Shell station just fourteen miles away, and the December 1976 shooting at Mt. Hope received widespread media coverage. In weighing the evidence, the court would resolve this credibility issue *against* the Defendants.

pletely disregard the question; as to the question by defense counsel to Sergeant Willis, who was not qualified as an expert, the court ruled that any answer he would give to the question would not aid the jury and would be mere speculation, and the court also excluded it under Rule 403, Fed. R.Evid., even if relevant and proper. The court does not believe that the other grounds cited by the Terry Defendants for a new trial, including the size of the verdict itself, the court's instructions to the jury, or any of the other conclusory allegations by the Defendants, warrant a new trial. The court believes that the proper disposition of this case is to grant the Defendants' motions for judgment notwithstanding the verdict, and deny the Defendants' motions for a new trial, whereupon the issues of foreseeability, negligence, and causation will be reviewed fully by the court of appeals, and the jury's verdict will be either reinstated or set aside as may be deemed appropriate.

### Defendant Shell Oil Company's Cross–Claims for Indemnity

Despite the granting of the Defendants' Rule 50(b) motions, the court will rule upon the cross-claims of Shell Oil Company so that all issues before the trial court will be resolved and can be considered by the court of appeals if necessary.

The jury verdict found that the Mt. Hope Shell Service Station and the Terry Defendants were liable to the Plaintiff, and that Shell Oil Company was also liable on the basis of apparent authority. Shell seeks full indemnity from the station and the Terrys for any damages that Shell may be called upon to pay to the Plaintiff by reason of the negligence of the station owners and operators. Shell's liability to the Plaintiff is derivative, based on the tortious conduct of the station owners and operators, and therefore Shell is entitled to recover full indemnity from Mt. Hope Shell and the Terrys. *See, e.g., Hendricks v. Leslie Fay, Inc.*, 273 N.C. 59, 159 S.E.2d 362 (1968); *Hornby v. Pennsylvania Nat. Mut. Cas. Ins.*, 77 N.C.App. 475, 484, 335 S.E.2d 335, 341 (1985), *cert. denied*, 316 N.C. 193, 311 S.E.2d 570 (1986).

Shell also seeks indemnity from Quality Oil Company, a limited partnership, based on a provision in the jobber contract between Shell and Quality. At the close of the evidence in this case, the court granted Quality's motion for a directed verdict and dismissed it from the case, ruling that there was insufficient evidence that Quality exercised control over the operations of the Mt. Hope Shell Station. Paragraph 11.1 of the jobber contract between Shell and Quality provides as follows:

11.1 *Indemnity.* Buyer shall defend and indemnify Shell, its employees and agents, against all claims, suits, liabilities, losses and expenses (including attorneys' fees and other costs of litigation) arising out of any injury, disease or death of persons (including Buyer or Buyer's employees and including injury to personal rights or relations) or damage to property (including Buyer's) caused by or happening in connection with Buyer's loading, transportation, unloading, storage, handling, sale or use of the Products sold hereunder, except when caused (a) by the sole negligence of Shell, its employees or agents, or (b) by defects in the Products not caused or contributed to by any act or omission of Buyer or Buyer's employees or agents. Shell shall have the right, but not the duty, to participate in the defense of any claim or litigation with attorneys of Shell's selection. Buyer's obligations hereunder shall survive any termination of this contract.

Quality contends that any liability caused by the sole negligence of Shell or its agents is specifically excluded from indemnification under Paragraph 11.1 in that the language provides that Quality shall defend and indemnify Shell from certain listed occurrences "except when caused (a) by the sole negligence of Shell, its employees or agents,...." Quality points out that the jury in this action found that Shell was liable to the Plaintiff only because it believed that the Terry Defendants were clothed with apparent authority.

Quality also contends that a further reason for denying indemnity is that the as-

sault on the Plaintiff was not an occurrence covered by the terms of Paragraph 11.1, in that the language provides that Quality shall defend and indemnify Shell for certain listed occurrences arising out of injury "caused by or happening in connection with Buyer's [Quality's] loading, transportation, unloading, storage, handling, sale or use of the Products sold hereunder." Quality contends that the language used was drafted by Shell and clearly refers to injuries arising only out of the transportation and handling of Shell products, and not to unrelated incidents happening on the premises of stations to which Quality might ultimately supply gasoline.

■ The court finds the arguments of Quality to be persuasive. The jury found that Shell, by allowing the use of its signs, uniform, and other indicia of authority, allowed the Mt. Hope Shell Station to represent to third parties, and permitted them to believe, that the station had an agency relationship with Shell. Also, the court does not believe from the evidence presented at trial concerning the jobber contract, and construing the instrument as a whole, that the indemnity provision was intended by the parties to apply to liability of this type, nor can such coverage be reasonably inferred from the language used. The claim in this case was not caused by nor did it happen in connection with the sale or use of gasoline pursuant to the jobber contract except in the very broadest sense. Any ambiguity should be construed against the drafter of the agreement. Therefore the court will deny the cross-claim by Shell Oil Company against the Quality Oil partnership.

A judgment and order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

In the event the jury's verdict is reinstated, the court will enter an appropriate order or judgment based on the rulings made in this memorandum opinion concerning the Defendant Shell Oil Company's cross-claims against the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, the Defendant

Mt. Hope Shell Service Station, and the Defendant Quality Oil Company seeking indemnity for any potential liability of Shell to the Plaintiff in this case.

## JUDGMENT AND ORDER

BULLOCK, District Judge.

This civil action came on for trial before the court and a jury during the week of July 28, 1986, and the issues having been duly tried and answered by the jury as follows:

1. Was the criminal assault on the Plaintiff reasonably foreseeable by the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership?

<u>Yes</u>
(Yes or No)

2. If the answer to Issue No. 1 is "Yes," did the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership, breach their duty of ordinary care under the circumstances by failing to provide adequate security measures?

<u>Yes</u>
(Yes or No)

3. If the answers to Issues Nos. 1 and 2 are "Yes," was the breach of duty by the Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the Defendant Mt. Hope Shell Service Station, a partnership, a proximate cause of the injuries suffered by Plaintiff?

<u>Yes</u>
(Yes or No)

4. Were Defendants Charles Lawrence Terry and Troy Virgil Terry, both individually and doing business as Mt. Hope Shell Service Station, and the De-

fendant Mt. Hope Shell Service Station, a partnership, agents of the Defendant Shell Oil Company by the existence of apparent authority?

Yes

(Yes or No)

5. If the answers to Issues Nos. 1 and 2 and 3 are "Yes," what amount, if any, of actual and compensatory damages is the Plaintiff entitled to recover?

$450,000.00

(amount)

For the reasons set forth in a memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that the Defendants' motions for judgment notwithstanding the verdict pursuant to Rule 50(b), Fed.R.Civ.P., be, and the same hereby are, GRANTED, and that the jury verdict in favor of the Plaintiff be, and the same hereby is, SET ASIDE; and

IT IS FURTHER ORDERED that the Defendants' alternative motions for new trial pursuant to Rule 59, Fed.R.Civ.P., be, and the same hereby are, DENIED.